IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02805-REB-NYW

REALITY TECHNOLOGY, INC.,
IVAN DRINKS, SR., and
IVAN DRINKS, JR.,

          Plaintiff,

v

UNITED STATES OF AMERICA,

          Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

This matter comes before the court on the Motion to Dismiss and for Judgment on the Pleadings filed by Defendant United States of America ("Defendant" or the "United States") on September 26, 2014 (the "Motion") [#33].   Pursuant to the Order of Reference [#5] dated October 15, 2013 and the Order Referring Motion [#37] dated September 29, 2015, the Motion was referred for recommendation to this Magistrate Judge.   The court has carefully considered the motions and related briefing, and the applicable case law.   For the following reasons, I respectfully RECOMMEND that:

    (1)    Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Judgment on the Pleadings [#33] be GRANTED, and that the Complaint be DISMISSED WITHOUT PREJUDICE.

# BACKGROUND

## I.      Plaintiffs' Complaint

Plaintiffs Reality Technology, Inc. ("Reality"), Ivan Drinks Sr., and Ivan Drinks Jr. (also collectively "Plaintiffs," or, when referred to individually, "Plaintiff") filed their original and operative Complaint in this matter on October 15, 2013.  [#1].  The following is a summary and recitation of the allegations contained in Plaintiffs' Complaint, which are presumed to be true for the purposes of Defendant's Motion.

Reality is a Colorado corporation, and functions as a "provider of software and information technology services."  [#1 at ¶¶ 1, 25].  Ivan Drinks, Sr. served as the President of Reality at all times relevant to the allegations of the Complaint, and Ivan Drinks, Jr. served as its CEO during the relevant time period.  [*Id.* at ¶¶ 2, 3].  The Small Business Authority ("SBA"), the governmental entity at issue in this Federal Torts Claims Act ("FTCA") lawsuit and one of the Defendants originally named in Plaintiffs' Complaint, "is a federal governmental agency originally established by the Small Business Act of 1953, 15 U.S.C. §631 *et seq.*, with an office in Denver, Colorado."[1]  [*Id.* at ¶ 4].

During or prior to the time period relevant to the Complaint, the SBA established the 8(a) Business Development Program ("8(a) Program" or "Program") to help assist "socially and economically disadvantaged individuals" in establishing successful entrepreneurial ventures, including in the field of governmental contracting.  [*Id.* at ¶ 17].  Participation in the 8(a) Program is divided into a "four-year developmental stage and a five-year transition stage."  [*Id.* at ¶ 18].  Under the rules of the Program, participants are eligible to "form joint ventures and

---

[1] SBA employees Karen Milles ("Ms. Mills"), Carolyn A. Terrell ("Ms. Terrell"), Amy J. McDowell "Ms. McDowell"), and Karen M. Young ("Ms. Young") were also named as Defendants in the Complaint.  [*Id.* ¶¶ 5-8].  The United States of America was substituted as the sole Defendant by the court's order dated September 16, 2014.  [#30].

teams to bid on contracts." [*Id.* at ¶ 18]. In addition, the "SBA also promotes a Mentor-Protégé Program, which allows starting 8(a) companies to learn the ropes from other experienced 8(a) businesses." [*Id.*] To help participants achieve potentially lasting success, the Program "requires 8(a) firms to: (1) maintain a balance between their commercial and government business; and (2) limit the total dollar value of sole-source contracts that an individual participant can receive while in the program to $100 million or five times the value of its primary NAICS code." [*Id.* at ¶ 21]. According to the Complaint, to "make sure 8(a) firms are on track to accomplish their goals and are following requirements, the SBA district offices monitor and measures the progress of participants through annual reviews, business planning, and systematic evaluations." [*Id.* at ¶ 22].

On July 6, 2005, Reality "became a participant in the SBA's Section 8(a) [P]rogram." [*Id.* at ¶ 25]. In July of 2008, CounterTrade, a "company that primarily provides computer hardware for government agencies" and was no longer eligible to participate in the Section 8(a) Program on its own, "approached Reality to discuss a possible business arrangement between the two companies via a teaming agreement." [*Id.* at ¶ 27]. CounterTrade indicated that Ms. Terrell, who was the "Lead Business Development Specialist for the Denver office of the SBA," referred it to Reality. [*Id.* at ¶ 6, 27]. As Reality discussed the possible teaming agreement with CounterTrade, Reality "contacted [Ms.] Terrell at the SBA because she had met with CounterTrade" and "requested assistance regarding a potential agreement with CounterTrade." [*Id.* at ¶ 28]. On August 22, 2008, Reality "sent an email to [Ms.] Terrell attaching a banking agreement and requesting guidance and approval from the SBA to participate in a Teaming Agreement with CounterTrade." [*Id.* at ¶ 29]. Ms. Terrell replied that her office had previously met with CounterTrade to discuss the SBA's "Mentor/Protégé Program" and provided Reality's

name as part of a listing of potential participants. [*Id.*] Ms. Terrell also noted that as to any potential joint venture between Reality and CounterTrade, determining whether to enter into such an arrangement would be a "strictly a business decision that [Reality] must make on behalf of [its] firm." [*Id.*] On August 29, 2008, and September 3, 2008, Reality received emails from CounterTrade attaching "8(a) contracts awarded to Reality for fulfillment of products supplied by Countertrade." [*Id.* at ¶¶ 30-31]. On September 5, 2008, "Reality entered into a Teaming Agreement with Countertrade," and subsequently provided notice to CounterTrade of termination of same on October 19, 2008 (notice that was acknowledged by CounterTrade on October 20, 2008). [*Id.* at ¶¶ 32-33]. On October 27, 2008, at Ms. Terrell's request, "Reality sent a copy of the Teaming Agreement, signed September 5, 2008, with Countertrade to the SBA." [*Id.* at ¶ 34]. No one from the SBA followed up with Reality regarding the Teaming Agreement with CounterTrade, and "[e]ven after receiving the cancelled Teaming Agreement from Reality, the SBA continued to award contracts to Reality that it knew Reality could only satisfy via products provided by Countertrade." [*Id.* at ¶¶ 35-36]. According to the Complaint, "SBA provided no support to Reality towards the fulfillment of the awarded 8(a) contracts." [*Id.* at ¶ 37]. On (or about) May 13, 2010, "Reality sent a letter to Mills, explaining improper action and abuses within the SBA 8(a) Development Program by SBA employees Terrell, McDowell, and Young." [*Id.* at ¶ 39]. In September of 2011, "the SBA issued a Letter of Intent to Terminate," based in part on Reality's performance of the Teaming Agreement, and by September of 2012, termination proceedings—including denial of an appeal of termination by an Administrative Law Judge—were complete. [*Id.* at ¶ 40-41].

According to the Complaint,

the SBA failed Reality and the Drinks by, among other things: (1) failing to help Reality and the Drinks properly team with other firms, including CounterTrade

Products, Inc. ("CounterTrade") to perform larger contracts; (2) failing to review and provide guidance to Reality and the Drinks as to the propriety of a certain proposed teaming agreement between Reality and CounterTrade; (3) awarding approximately $8.5 million dollars in government contracts to Reality that the SBA knew would be performed, at least in part, by CounterTrade pursuant to a teaming agreement that the SBA apparently believed violated 8(a) program rules; (4) ignoring Reality's request to stop awarding it government contracts pursuant to its teaming agreement with CounterTrade; (5) terminating the Drinks, and thus Reality, from the 8(a) program based on the work it performed pursuant to its teaming agreement with CounterTrade, after finding and representing to Reality that it was eligible for the government contract awards; and (6) failing to explain that the SBA believed Reality's participation in the teaming agreement would disqualify Reality and the Drinks from the 8(a) program. [*Id.* at ¶ 24].

Moreover, Plaintiffs identify the following purported duties said to have been owed by SBA to Plaintiffs that were allegedly breached, that the court considers as separate theories of FTCA liability:

[1] Provide reasonable guidance and assistance to Plaintiffs[;] [2] Communicate openly and honestly with Plaintiffs[;] [3] Respond to reasonable requests for information from Plaintiffs[;] [4] Obtain permission from Plaintiffs before providing Reality's name to anyone as a potential protégé to a mentor unknown to Reality[;] [5] Monitor any mentor/ protégé relationship to insure the relationship does not run afoul of the rules of the 8(a) Program or otherwise result in the termination of Defendants from the 8(a) Program[;] [6] To advise Plaintiffs whether the proposed teaming agreement with CounterTrade would violate the rules of the 8(a) Program[;] [7]  To advise Plaintiffs whether the proposed teaming agreement with CounterTrade would result in Plaintiffs' termination from the 8(a) Program[;] [8] Award government contracts only where Defendants reasonably believed Plaintiffs could fulfill the contracts without violating the rules of the 8(a) Program[;] [9] Help Plaintiffs properly team with other firms, including CounterTrade to perform larger contracts[;] [10] Review and provide reasonable guidance to Plaintiffs as to the propriety of the Teaming Agreement between Reality and CounterTrade[;] [11] Not award approximately $8.5 million dollars in government contracts to Plaintiffs that the SBA knew would be performed, at least in part, by CounterTrade pursuant to the teaming agreement that the SBA apparently believed violated 8(a) program rules[;] [12] Honor Reality's request to stop awarding it government contracts pursuant to its Teaming Agreement with CounterTrade[;] [13] Explain that the SBA believed

Reality's participation in the teaming agreement would disqualify Plaintiffs from the 8(a) program. [*Id.* at ¶¶ 43-44].[2]

While Plaintiffs recite the foregoing and allege that "Defendants breached those duties," they do not set forth specific causes of action. [*Id.* at 10]. As a result, the Parties' briefing can be, at times, difficult to follow. In their Response to the instant Motion, Plaintiffs state that assert a "sole claim for negligence." [#48 at 9]. During the motions hearing, counsel for Plaintiffs confirmed that Plaintiffs seek redress through a claim for negligence. Nevertheless, the court considers Plaintiffs' theories of liabilities as if they were pled as separate negligence causes of action, and considers their substance, not simply Plaintiffs' assertion that they all fall under the umbrella of "negligence."

## ANALYSIS

### I.     Standard of Review

#### A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

The United States seeks dismissal of Plaintiffs' Complaint in its entirety under Fed. R. Civ. P. 12(b)(1). Challenges to a court's subject matter jurisdiction may take two forms: facial or factual. Facial attacks concern the sufficiency of a complaint as pled. *Holt v. United* States, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted). In reviewing whether a complaint has pled sufficient facts to support subject matter jurisdiction on its face, the court accepts the allegations in the complaint as true. *Id.* When a party's Rule 12(b)(1) motion challenges the facts upon which subject matter depends, "a district court may not presume the truthfulness of the complaint's factual allegations." *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (citation and quotations omitted). Instead, the court has "wide discretion

---

[2] The application of law to Plaintiffs' distinct theories of liability result in different conclusions in some cases. Therefore, I utilize the numbering system reflected in this paragraph to assist the reader in correlating the court's findings to the particular theory advanced by Plaintiffs.

to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt*, 46 F.3d at 1003. Reliance on evidence outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under Rule 56. *Id.* (citation omitted).

The Tenth Circuit "recognize[s] an exception to this general rule, where the 'jurisdictional question is intertwined with the merits of the case.'" *Sizova*, 282 F.3d at 1324 (quoting *Wheeler v. Hurdman*, 825 F.3d 257, 259 (10th Cir. 1987)). In determining whether the jurisdictional question is intertwined with the merits of Plaintiffs' case, the court inquires "whether the resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Sizova*, 282 F.3d at 1324. Under those circumstances, the court must convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion to dismiss or a Rule 56 motion for summary judgment. *Holt*, 46 F.3d at 1003.

### B.   Motion for Judgment on the Pleadings

In addition, the United States seeks judgment on the pleadings pursuant to Rules 12(c) and 12(h)[3] of the Federal Rules of Civil Procedure, which are governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nelson v. State Farm Mut. Auto Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005) (citation and quotation omitted). Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the court must "'accept as true all well pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff.'" *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010)

---

[3] Rule 12(h) provides that failure to state a claim upon which relief can be granted may be raised by a motion under Rule 12(c). Fed. R. Civ. P. 12(h)(2)(B). Rule 12(c) motions are typically filed after pleadings, *see Deneffe v. SkyWest, Inc.*, No. 14-cv-00348-MEH (D. Colo. Jan. 16, 2015), and lead to judgment being entered.

(quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).   However, if a "document is referred to" in a plaintiff's "complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (collecting authorities).   Moreover, a plaintiff may not rely on mere labels or conclusions in his pleadings, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*).

Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Iqbal*).   As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."   The plaintiff must frame a complaint with enough factual matter, when taken as true, to suggest that he or she is entitled to relief.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### C.   Application

While not explicitly discussed, the Parties appear to differ on whether the United States' challenge to subject matter jurisdiction is a facial or factual attack, as Defendant argues that the court may look at evidence outside of the four corners of the Complaint to decide the motion

(indicating a factual inquiry) [#33 at 8-9] and Plaintiffs argues that the court must accept all well-pled allegations in the Complaint as true (indicating a facial attack) [#48 at 2-3].  Because the United States has submitted exhibits for consideration, the court considers the challenge a factual attack.  However, except when considering whether proper notice was provided to the SBA, the court has accepted the well-pled allegations in the Complaint as true.

Defendant raises numerous different grounds, which the court will address in the following order:  (1) the court lacks jurisdiction because Reality failed to provide timely notice to the SBA as required by the FTCA; (2) the court lacks jurisdiction because the FTCA does not waive sovereign immunity to claims sounding in tortious interference; (3) the court lacks jurisdiction because the FTCA does not waive sovereign immunity as to misrepresentation claims; (4) the FTCA's "discretionary function" exception precludes waiver of sovereign immunity as to any claim that the termination of Reality from the 8(a) Program was itself tortious; (5) the court should dismiss Plaintiffs' negligence claim (and hence the Complaint) because Plaintiffs fail to adequately plead that the SBA breached any duty that would be cognizable as a duty under Colorado law as to a private person, as required to invoke the FTCA's waiver of sovereign immunity as to a claim for negligence; and (6) any claim premised on conduct other than the termination itself would be time-barred.[4]  The court now turns to each of these bases for dismissal.

---

[4] The United States characterizes its statute of limitations argument as an issue of subject matter jurisdiction.  [#33 at 13-19]. Contrary to Defendant's arguments and the prior precedent of this circuit, the FTCA's statute of limitations is non-jurisdictional.  *U.S. v. Kwai Fun Wong*, 135 S.Ct. 1625 (2015).  Therefore, the court considers this argument under Rule 12(c) rather than Rule 12(b)(1), and takes it out of order of presentation by the Parties.

II.     **Subject Matter Jurisdiction**

A.     **FTCA Notice Requirement**

The United States first argues that the court lacks jurisdiction to entertain this action because Plaintiffs failed to provide proper notice under the FTCA.  [#33 at 11-12]. The FTCA only provides a limited waiver of the government's sovereign immunity.  *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (*Mitchell*); *United States v. Orleans*, 425 U.S. 807, 814 (1976) (construing FTCA and recognizing that "the United States can be sued only to the extent that it has waived its immunity").  To establish subject matter jurisdiction under the FTCA, a claimant must first give notice to the appropriate federal agency. 28 U.S.C. § 2675(a).  That notice must include (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.  *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992) (to maintain FTCA action, a plaintiff "prior to filing suit in federal court" must "submit a claim in writing to the proper federal agency within two years of the date of the incident, and the claim must specify the sum certain amount of the recovery sought") (citation and quotation omitted).  In evaluating whether the substance of a claim has properly been presented to the relevant administrative agency in the first instance, the Tenth Circuit has recognized that "notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable" is all that is required, and accordingly, "the FTCA's notice requirements should not be interpreted inflexibly."  *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852-53 (10th Cir. 2005) (citation omitted).

Applying the "facts and circumstances" test to the allegations of Plaintiffs' Complaint and the administrative notices referenced therein [Complaint at ¶¶ 11-12] and attached as exhibits to Defendant's Motion [#33-2 & #33-3], I find that Plaintiffs provided sufficient notice of the factual and circumstantial underpinnings of the Complaint to the SBA.  The United States' argument to the contrary, *i.e.*, that "the only three causes of action listed and discussed [in the January 2011 Notices (#33-3)] were claims for fraud, damage to character and reputation, and abuse of public trust," [#33, at 12], is unpersuasive.  As set forth by the Tenth Circuit, the FTCA's notice requirements are concerned with whether Plaintiffs have disclosed the facts at issue to provide the government fair notice, rather than whether Plaintiffs have affixed the same labels to any potential cause of action.  In the declarations accompanying Reality's January 2011 Administrative Complaint, Reality complained to the SBA that Reality sought review by the SBA of the CounterTrade Teaming Agreement prior to entering into it, and failed to receive assistance in this regard from the SBA leading up to the point that Reality's principals felt compelled to enter into the Teaming Agreement to fulfill orders that CounterTrade had accepted in Reality's name.  [#33-3, at 11-12].  Moreover, the Administrative Complaint also incorporates factual allegations that even after termination of the Teaming Agreement in 2008, CounterTrade continued to fraudulently accept orders in Reality's name—and that even though Reality reached out to the relevant (but unspecified) "government agencies" about this practice, the SBA never addressed the situation.  [*Id.* at 12].  Less than a year after its termination from the 8(a) Program, Reality complained to the SBA that the SBA's actions resulted in putting Reality in a position where it was at least arguably subject to termination from the Program.  [#33-2 & Complaint, ¶¶ 12, 41].  Putting aside the question of whether any of this conduct implicates a cognizable cause of action under the FTCA, these purported acts and omissions form the gravamen of the

Complaint now before the court.  Therefore, I find that dismissal for lack of jurisdiction based on failure to provide adequate notice is not warranted.

### B.     Contractual Rights Exception to Waiver of Sovereign Immunity

The United States next argues that Plaintiffs' allegations amount to a claim for tortious interference, and such a claim is precluded as a matter of law.  By its express terms, the FTCA declines to waive sovereign immunity as to claims "arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h).  As noted by Defendant, some courts have expressly held that the bar applies to claims alleging interference with prospective contractual relations.  [#33 at 20 (citing *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151 (D.C. Cir. 1985)].  This view has been adopted by the Tenth Circuit.  *See also Cooper v. American Auto Ins. Co.*, 978 F.2d 602, 613 (10th Cir. 1992); *Mecca v. United States*, 389 Fed.Appx. 775, 780 (10th Cir. 2010).   A claim for tortious interference with prospective business advantage requires "a showing" that some "particular contract is prevented from being formed." *Shell v. American Family Rights Ass'n*, No. 09–CV–00309–MSK–KMT, 2010 WL 1348548, *16 (D. Colo. March 31, 2010) (citing *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195–96 (Colo. Ct. App. 2009)).

Plaintiffs assert that their only cause of action is one for negligence, and they "have not alleged that the SBA's negligence interfered with any existing contract or with the procurement of any particular future contract."  [#48 at 8.]   Plaintiffs go on to state, however, that the SBA's negligence resulted in barring Plaintiffs from 8(a) federal contracts.  [*Id.*]  In addition, as part of their theories of liability, Plaintiffs aver that the SBA breached its duties to "[8] [a]ward government contracts only where Defendants reasonably believed Plaintiffs could fulfill the contracts without violating the rules of the 8(a) Program;" "[9] [h]elp Plaintiffs properly team with other firms, including CounterTrade to perform larger contracts;" and "[11] [n]ot award

12

approximately $8.5 million dollars in government contracts to Plaintiffs that the SBA knew would be performed, at least in part, by CounterTrade pursuant to the teaming agreement that the SBA apparently believed violated 8(a) program rules."   [#1 at ¶¶ 43-44].   The upshot of these theories is that Defendant's actions interfered with its contracting or ability to contract with third parties, and as such, the court lacks subject matter jurisdiction over such claims as they arise out of interference with contract rights.   28 U.S.C. § 2680(h).   Plaintiffs cannot invoke this court's subject matter jurisdiction simply by avoiding the word "contract" in denominating the cause of action.   *See Mecca v. United States*, No. 08–cv–02813–REB–CBS, 2009 WL 4268365, *4 (D. Colo. Nov. 20, 2009) (J. Blackburn) *aff'd,* 389 Fed.Appx. 775, 780 (10th Cir. 2010).   However, I do not find that the other bases for purported negligence are simply ones related to tortious interference that have been recast as negligence to avoid the jurisdictional bar.   Accordingly, I find that the FTCA's jurisdictional bar as to tortious interference claims applies only insofar as Plaintiffs seek relief from the SBA's actions that had on impact on Plaintiffs' ability to engage in 8(a) federal contracts as discussed in paragraphs [8], [9], and [11].

### C.   Misrepresentation Exception to Waiver of Sovereign Immunity

Defendant also argues that Plaintiffs' claim is one for misrepresentation, and as such, is precluded.   As is the case as to tortious interference, under 28 U.S.C. § 2680(h), the waiver of sovereign immunity allowing suits against the federal government also does not extend to "any claim arising out of . . . misrepresentation."   The misrepresentation exception applies "when the action itself falls within the commonly understood definition of a misrepresentation claim" – whether negligent or willful.   *Block v. Neal*, 460 U.S. 289, 296 n.5 (1983) (citations and quotations omitted); *United States v. Neustadt*, 366 U.S. 696, 702 (1961).   Even absent any affirmative representation by the relevant governmental actor, courts have held that

"miscommunication and non-communication yield the same result for purposes of the misrepresentation exception, because the misrepresentation exception encompasses failure to communicate as well as miscommunication." *Zelaya v. U.S.*, 781 F.3d 1315, 1334 (11th Cir. 2015) (citation and quotation omitted) (collecting authorities). The other "essential elements" of misrepresentation claim are reliance and pecuniary loss. *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 854 (10th Cir. 2005) (citation omitted).

Plaintiffs contend that "Plaintiffs did not assert a claim for misrepresentation, did not allege misrepresentation occurred, and did not even mention reliance anywhere in their complaint," and therefore, Defendant has failed to carry its burden of establishing that an exception to the FTCA applies. [#48 at 9-10]. Defendant urges the court to look beyond the label associated with Plaintiffs' claims, because the allegations, regardless of the label, amount to a negligent misrepresentation claim. [#33 at 22].

In the Complaint, Plaintiffs allege that Defendant breached duties to: [2] communicate openly and honestly with Plaintiffs; [3] respond to reasonable requests for information from Plaintiffs; [6] advise Plaintiffs whether the proposed teaming agreement with CounterTrade would violate the rules of the 8(a) Program; [7] advise Plaintiffs whether the proposed teaming agreement with CounterTrade would result in Plaintiffs' termination from the 8(a) Program; [10] review and provide reasonable guidance to Plaintiffs as to the propriety of the Teaming Agreement between Reality and CounterTrade; and [13] explain that the SBA believed Reality's participation in the teaming agreement would disqualify Plaintiffs from the 8(a) program. [#1 at ¶¶ 43-44]. These theories of liability are grounded in the SBA's failure to communicate properly with them and any attempted recovery based on them plainly fall within the misrepresentation

exception and are barred, regardless of whether they are characterized as "negligence" instead of "misrepresentation."  *Neustadt*, 366 U.S. at 706-07.

However, other allegations such as Defendant's alleged breach in failing to "[8] award government contracts only where [SBA] reasonably believed Plaintiffs could fulfill the contracts without violating the rules of the 8(a) Program;" Defendant's alleged decision to award "[11] $8.5 million dollars in government contracts to Reality that the SBA knew would be performed, at least in part, by CounterTrade pursuant to a teaming agreement that the SBA apparently believed violated 8(a) program rules;" and its alleged conduct in ignoring "[12] Reality's request to stop awarding it government contracts pursuant to its teaming agreement with CounterTrade" are not grounded principally in any alleged miscommunication—including any failure to communicate certain information to Reality.  [#1 ¶¶ 24, 43-44].  Accordingly, I find that the misrepresentation exception applies to theories [2], [3], [6], [7], [10], and [13], thus divesting the court of jurisdiction by reason of 28 U.S.C. § 2680(h).

### D.      Discretionary Function Exception

Defendant also argues that the FTCA's discretionary function exception divests this court of subject matter jurisdiction over the SBA's termination of Reality from its 8(a) Program.  [#33 at 23-24].  The FTCA exempts the United States from any liability "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."  28 U.S.C. § 2680(a).  Whether conduct constitutes a "discretionary function or duty" depends on whether it "involves an element of judgment," and the exercise of judgment is "based on considerations of public policy."  *Berkovitz v. United States*, 486 U.S. 531, 537 (1988).

Under the law of this Circuit, the court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citation omitted). Nevertheless, the court need not consider the declaration of John Klein in resolving the applicability of the discretionary function exception to the FTCA to the allegations arising from the termination of Reality from the 8(a) Program. Plaintiffs do not dispute that Reality was terminated under a regulation that states the "SBA may terminate the participation of a concern in the 8(a) BD program prior to the expiration of the concern's Program Term for good cause," including failure by a concern to maintain its eligibility in the Program or failure by the concern to disclose to SBA the extent to which non-disadvantaged persons or firms participate in the management of the Participant business concern. 13 C.F.R. § 124.303(a)(20); 124.303(b). Plaintiffs sidestep whether termination itself is a discretionary function by arguing that Defendants "misapprehend the crux of Plaintiffs' claims," insisting that they are alleging "the SBA's conduct from 2008 through 2012" prior to termination, rather than the termination itself, is actionable. [#48 at 11].

On the record provided by the Parties, I find that the discretionary function exception divests this court of jurisdiction over any cause of action based on the termination of Reality from the 8(a) Program. The United States did not address Plaintiffs' argument that the SBA's conduct from 2008 through 2012 is not subject to the discretionary function exception and it does not appear to assert that such conduct is subject to the exception, and therefore, the court declines to extend its application *sua sponte*.

### E.      Cognizable Duty

The Parties agree that to sustain a claim for negligence under the FTCA, Plaintiffs must first establish the SBA owed a duty to Plaintiffs.   [#48 at 11-12].   Plaintiffs suggest that "however the SBA's duties to Plaintiffs were initially defined, it created an untenable situation for Plaintiffs, both through omission and commission."   [*Id.*]   Contrary to Plaintiffs' assertion, it is essential to determine what the basis is (if any) for the thirteen duties enumerated by Plaintiffs. At oral argument, Plaintiffs suggested the SBA had duties to Plaintiffs based on the mission and purpose of the 8(a) Program.   But the law is clear:   to the extent that Plaintiffs rely upon the SBA's governing statutes, federal regulations, or guidelines to establish such a duty, violations of such statutes, federal regulations, or guidelines cannot form the basis of FTCA liability.   *United States v. Agronics, Inc.*, 164 F.3d 1343, 1345-46 (10th Cir. 1999) (citation omitted).   Without a corresponding state law duty, which will be discussed below, the court lacks subject matter jurisdiction over the entirety of Plaintiffs' claim for negligence.   *See Ayala v. United States,* 49 F.3d 607, 610 (10th Cir. 1995) ("Even if specific behavior is statutorily required of a federal employee, the government is not liable under the FTCA unless state law recognizes a comparable liability for private persons.").

## III.   Judgment on the Pleadings

Having found that the court lacks subject matter jurisdiction over the theories of liability asserted by Plaintiffs, the court now turns to the United States' additional arguments regarding the sufficiency of the pleading to determine whether Plaintiffs may proceed on a negligence theory based on state law duties.

A.     **Plaintiff's Failure to Articulate a Breach of Any Cognizable Duty Under Colorado Law**

Defendant argues that it is entitled to judgment on the pleadings because Plaintiffs fail to adequately plead that the SBA breached any duty that would be cognizable as a duty under Colorado law as to a private person, as required to invoke the FTCA's waiver of sovereign immunity. This argument applies to all thirteen theories of liability identified by Plaintiffs in their Complaint.  Under 28 U.S.C. § 1346(b), this court's jurisdiction to determine the United States' potential liability for purported "wrongful act[s] or omission[s]" is limited to "such circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*, *see also Ayala*, 49 F.3d at 610.

Here, there is no dispute that Colorado substantive law applies.  [#1 at ¶ 15; #33 at 26-27].  Under Colorado law, "the elements of a negligence claim are that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury."  *Ayala*, 49 F.3d at 611 (citing *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo. 1992)).  Accordingly, absent a legal duty to protect the plaintiff from injury flowing from the defendant to the plaintiff, no cause of action can sound in negligence.  *Id.* (citing *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992)).

The question of whether an underlying duty exists is a matter of law for the court's determination. *Id.* The court's evaluation of whether a duty exists includes involves consideration of numerous factors, such as "(1) the risk [implicated by the actor's conduct], (2) the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, (3) the magnitude of the burden of guarding against injury or harm, and the (4) the

18

consequences of placing the burden upon the actor." *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002) (citation omitted).

Defendant contends that Plaintiffs do not adequately "allege a breach of duty established by Colorado law." [#33 at 27].  I agree.  To start, most of the purported duties alleged in Plaintiffs' Complaint amount to nonfeasance, rather than misfeasance.  [*See, e.g.*, #1 at ¶ 43 (alleging, *inter alia*, that Defendant failed to "[p]rovide reasonable guidance and assistance to Plaintiffs," declined to "[r]espond to reasonable requests for information from Plaintiffs," did not "[m]onitor any mentor/protégé relationship to insure the relationship [did] not run afoul of the rules of the 8(a) Program or otherwise result in the termination of Defendants from the 8(a) Program," and failed to "advise Plaintiffs whether the proposed teaming agreement with CounterTrade would violate the rules of the 8(a) Program").  But under traditional common law principles, liability for mere nonfeasance is the exception, rather than the rule.  And to the extent Plaintiffs' Complaint rests on a voluntary undertaking theory of liability—that in essence the SBA's acts assisting Plaintiffs created some further duty of care to provide additional assistance, negligently denied—such a theory is not viable under Colorado law.  *Stroh v. U.S.*, No. 11–cv–00344–LTB–BNB, 2012 WL 4069354, at *7 (D. Colo. Sept. 17, 2012) (holding that "a Good Samaritan analogy could not support FTCA jurisdiction because a private person would not be liable under Colorado law for negligence")  (citing Colo Rev. Stat. § 13–21–116(2)(a), which provides in part that "[t]o encourage the provision of services or assistance by persons on a voluntary basis, a person shall not be deemed to have assumed a duty of care where none otherwise existed when he performs a service or an act of assistance . . .").  Nor can I discern any basis in Plaintiffs' Complaint that would to permit the court to infer a "special relationship" between Defendant and Plaintiffs that would support a duty of affirmative action.  *Smit v.*

*Anderson*, 72 P.3d 369, 372 (Colo. App. 2002) ("In nonfeasance cases, the existence of a duty has been recognized only in a limited number of special relationships between the parties such that social policy justifies the imposition of a duty to act.").  Indeed, Plaintiffs have not identified any authority to support the conclusion that the SBA had any special relationship with them.

Plaintiffs also take issue with the manner in which the SBA purportedly awarded Reality with contracts, *see, e.g.*, [#1 at ¶ 24, asserting Defendant "ignor[ed] Reality's request to stop awarding it government contracts pursuant to its teaming agreement with CounterTrade"], and "terminat[ed] [Plaintiffs] from the 8(a) program based on the work [Reality] performed pursuant to its teaming agreement with CounterTrade, after finding and representing to Reality that it was eligible for the government contract awards."][5]  *[Id.]*  During the motions hearing, Plaintiff insisted that the SBA owed Plaintiffs a duty because the mission of the 8(a) Program is to help small, disadvantaged businesses achieve success in the marketplace.  *See e.g.*, https://www.sba.gov/category/navigation-structure/8a-business-development-program.  When pressed to do so, however, Plaintiffs' counsel could point the court to no case or other authority (and the court could not find one in its own research) that recognized a comparable private duty owed to an individual under Colorado law.  Accordingly, I conclude that Plaintiffs failed to adequately plead any breach of any cognizable duty under Colorado law, and their Complaint for negligence is subject to dismissal.

### F.      Statute of Limitations

A two-year statute of limitations applies to claims brought under the FTCA.  28 U.S.C. § 2401(b) ("[a] tort claim against the United States shall be forever barred unless it is presented in

---

[5] Plaintiffs' Complaint does not seek to challenge the termination itself, but rather "the SBA's conduct from 2008 through 2012" prior to termination.  [#48 at 11].   The regulations provide that the "SBA may terminate the participation of a concern in the 8(a) BD program prior to the expiration of the concern's Program Term for good cause."  13 C.F.R. § 124.303(a)(20).

writing to the appropriate Federal agency within two years after such claim accrues"). The purported misconduct Plaintiffs allege in their Complaint began no later than the summer of 2008 [#1 at ¶¶ 29-35] and the first administrative complaint relevant to Plaintiffs' Complaint was not filed until January 28, 2011. The statute of limitations defense raised by Defendant's motion should be analyzed under Fed. Rule 12(b)(6) to determine whether Plaintiffs have met their burden in pleading and/or arguing around the potential time bar apparent on the face of their Complaint. *See Bullington v. United Air Lines Co.*, 186 F.3d 1301, 1310 n. 3 (10th Cir.1999) (recognizing "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period") (citation omitted), overruled on other grounds as recognized by *Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir. 2003). In opposing Defendant's motion, Plaintiffs principally argue that "[w]hile some of the SBA's wrongful acts occurred in 2008, those acts were part of a pattern and practice of conduct that both pre- and post-dated the existence of the teaming agreement and eventually resulted in lost revenue for Reality and the suspension of Reality's eligibility for 8(a) government contracts." [#48 at 6].

I construe this statement as an attempt to invoke the "continue tort" or "continuing wrong" tolling doctrine recognized by the Tenth Circuit as applied to FTCA claims alleging a continuing trespass under Colorado substantive law. But I have found no authority extending that doctrine to negligence claims under Colorado law, much less negligence claims that, if interpreted as alleging a continuing series of tortious misconduct at all, would be premised essentially on a continuing series of omissions. Moreover, the Tenth Circuit has held that the doctrine is inapplicable in cases where "the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *U.S. v. Hess*, 194 F.3d

1164, 1176 n. 13 (10th Cir. 1999).   In view of Plaintiffs' Complaint and the administrative Complaints either incorporated by reference therein or otherwise properly within the court's view at this procedural posture, Plaintiffs have failed to meet their burden in showing that their injuries were other than "definite and discoverable," and/or that something "prevented" them from coming forward.   *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (documents incorporated by reference into a complaint properly considered in assessing pleadings challenged), *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("documents referred to in the complaint [that] are central to the plaintiff's claim" properly considered at pleading stage if "the parties do not dispute the documents' authenticity") (citation omitted).   Plaintiffs do not dispute that the teaming agreement with CounterTrade and the allegedly fraudulent actions perpetrated by CounterTrade began in the summer of 2008; that the SBA's declination to intervene also began that summer; injuries to Reality's business interests arose contemporaneously; and that had Reality diligently investigated the potential consequences of its course of action instead of unwarrantedly relying on the SBA to do so, it may have discovered that potential termination from the 8(a) Program was among them.   Because a "'continuing wrong' theory should not provide a means of relieving plaintiff from [his] duty of reasonable diligence in pursuing [his] claims," should the court find that it has jurisdiction over the Complaint, I find that it is nonetheless time-barred.   *Abdelsamed v. United States*, No. 01–N–1774, 2002 WL 31409521, *19 (D. Colo. Sept. 17, 2002) (citation and quotation omitted) (J. Nottingham).   In addition, nothing in the Complaint as pled suggests to the court that the statute of limitations should be tolled in any manner.

## CONCLUSION

Consistent with the reasons set forth herein, I respectfully RECOMMEND that:

(1)     Defendant's Motion to Dismiss for Lack of Jurisdiction and Judgment on the

        Pleadings [#33] be GRANTED; and

(2)     Plaintiffs' Complaint [#1] be DISMISSED WITHOUT PREJUDICE.[6]


DATED: May 29, 2015                              BY THE COURT:

                                                 /s/ Nina Y. Wang_____
                                                 United States Magistrate Judge

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).